Davis, J.,
dissenting. It seems to have been conceded at every stage of this case that Shaw v. Hoard, 18 Ohio St., 227, if adhered to would com trol the judgment in the present controversy; but the circuit court passed over it with the remark that it had been ignored if not substantially overruled in cases following Niles v. Gray, 12 Ohio St., 320. It is also stated in the conclusion of the majority opinion above that Shazv v. Hoard is in conflict with Niles v. Gray and subsequent cases which follow the latter. I have no difficulty in distinguishing, to my own satisfaction, Shazv v. Hoard from Niles v. Gray, and cognate cases. Indeed, it has always seemed to me that the distinction was very plainly indicated by the court itself, by Scott, J., in Carter v. Reddish, 32 Ohio St., 1, as follows: “The Enqdisli rule that a devise to A. and his heirs, followed by a devise over in case A. die without issue, will be cut down to a fee tail in A., and the word heirs be construed *60 as meaning issue, is owing to the fact that in that country the words ‘dying without issue’ are construed as meaning an indefinite failure of iss%ie. 2 Jar. on Wills, 301. In this state, however, it is well settled that the words ‘dying without issue’ import a dying without issue living at the death of the prior devisee. Parish’s Heirs v. Ferris, 6 Ohio St., 563; Niles v. Gregory (misprint for Niles v. Gray), 12 Ohio St., 320. Still, we should have no hesitation in finding, from the language of the will before us, that the testator intended a' life estate only for the first devisees, if the sole condition of the limitation over to the nephews and nieces had been the dying of his children without issue; and without reference to the time when they should so die. But such is not the language of the will,” etc. An examination of the cases referred to by Judge Scott, as well as the other decisions of this court relied on by the majority, will disclose the fact that he has stated the doctrine of this court with admirable precision and conciseness; and he cannot be presumed to have misunderstood the decisions to which he refers, for he participated in and concurred in both of them. And we will not underrate the authority of the distinction outlined in Carter v. Reddish, when we remember that the personnel of the court which made- it was not one whit inferior to the highest standards of this court as to breadth of learning, depth of insight, sound discrimination and analytic power. And still, in Carter v. Reddish, notwithstanding those decisions, the court would have had “no hesitation in finding that the testator intended a life estate only for the first *61 devisees,” under conditions such as are found in Shaw v. Hoard and the case now at bar; but said, that such conditions did not exist in Carter v. Reddish.
But I waive further elucidation of this proposition because from my point of view the question as to the nature of the estate devised by this will is merely academic. It is a matter of indifference whether it be a life estate or a determinable fee; because in either case the only power of disposition apparently intended by the testator, is by will, as provided in this clause: “Nothing in the foregoing will shall be construed as to deprive either of my sons disposing of their portions by will on their attaining the age of twenty-one years respectively. The above limitations over shall give way to the provisions of such wills.” That is to say, the testator gives to' his sons the power of appointment by will and except in that way only, the property devised cannot be diverted from the family line prescribed by the testator. Whether each of the sons took an estate for life with a contingent remainder over or a fee simple determinable on the happening of the contingency, he could not defeat the devolution ‘ of the property within the family, as prescribed by the testator, except by appointment in a will. I will not discuss this proposition further than to say that this clause of the will stands out as prominent as the Washington Monument and it cannot be ignored in any fair construction of the will.
The sons of the testator never executed the power of appointment by will. Charles Butler, from whom the defendants in error claim title, *62 by a course of procedure which is, to say the least, very suspicious, ■ obtained from one of them who had succeeded to the rights of the other a quitclaim deed for a consideration of “one dollar and other considerations.” This deed, as I think I have shown, he had no power to make, even if the transaction was free from fraud. Butler also, at or about the same time, procured from the executors of Henry Anderson a quitclaim upon a like expressed consideration in which it is recited that: “It being understood that the above described premises were conveyed to Henry Anderson in fee but held by him in his lifetime as a mortgage to secure the payment of a certain sum of money due from Charles Butler and Henry Anderson, which fact, after his death, was duly acknowledged under seal by William Anderson and James H. Anderson, his only heirs at law,” etc.
As I construe the will, neither- the sons of the testator nor his executors and trustees had power to divert the estate by these deeds; and I am constrained to believe that they executed the deeds under mistake and misinformation as to both the law and the facts.
I will not unnecessarily consume space by making any argument of my own to show that not a remnant of title, legal or equitable, remained in Butler after Anderson bought the property at the master commissioner’s sale, even after the agreement between Anderson and Butler on October 4, 1844. For brevity’s sake I refer to. the opinon in Anderson v. Messinger, by Severens, J., 146 Fed. Rep., 929. I might add something to that, but it would be fruitless.